**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| RENEE NADIA CARTER, | ) | 3:23-CV-00684 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| METLIFE GROUP, INC., | ) | |
| *Defendant*. | ) | December 7, 2023 |

**RULING AND ORDER ON DEFENDANT'S MOTION TO PARTIALLY DISMISS AND
MOTION TO STRIKE**

Sarala V. Nagala, United States District Judge.

Plaintiff Renee Nadia Carter brought this employment discrimination action in state court against her former employer, Defendant MetLife Group, Inc., asserting state law claims for discrimination based on disability, sex, and pregnancy; retaliation; negligent misrepresentation; and negligent infliction of emotional distress.  Defendant removed the case to federal court and then filed the present motion to partially dismiss the complaint, claiming that certain counts and allegations fail to state plausible claims.  In the same motion, Defendant also seeks to strike certain paragraphs of the complaint as immaterial, impertinent, or scandalous.  For the reasons described below, the Court GRANTS IN PART and DENIES IN PART Defendant's motion.  Specifically, the Court dismisses the hostile work environment theory espoused in Counts One and Two, the negligent misrepresentation claim (Count Five), and the negligent infliction of emotional distress claim (Count Six), and finds that Plaintiff need not strike any allegations from her complaint.

## I.      FACTUAL & PROCEDURAL BACKGROUND

The complaint contains the following allegations, which are accepted as true for the purpose of the present motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff began her employment with Defendant on September 27, 2021, in the position of Short Term Disability Claims Specialist.  Compl., ECF No. 1-5 ¶ 3.  That winter, in December of 2021, Plaintiff took leave after contracting COVID-19.  *Id.* ¶ 6.  Around February 7, 2022, after returning to work, Plaintiff learned she was pregnant.  Plaintiff informed Defendant of her pregnancy, and the fact that she would need to miss work on occasion to attend medical appointments related to her pregnancy.  *Id.* ¶¶ 7–8.  Plaintiff developed hyperemesis gravidarum, a pregnancy-associated health condition that can cause symptoms such as severe nausea, vomiting, weight loss, dehydration, dizziness, and lightheadedness.  *Id.* ¶ 9.

Defendant maintained "Attendance and Punctuality Policies," which defined scheduled and unscheduled absences.  *Id.* ¶ 27.  Each unscheduled absence constituted an Occurrence, and the accrual of six to seven Occurrences would result in termination.  *Id.* ¶¶ 29–30.  An unscheduled absence was an absence for which an employee did not provide management at least 24 hours of advance notice, and that did not fall into a particular category of recognized absences, such as Short-Term Disability Leave or Family and Medical Leave.  *Id.* ¶¶ 31, 28.

Plaintiff's morning sickness and hyperemesis gravidarum caused her to be sick throughout the day.  *Id.* ¶¶ 12, 14.  Plaintiff was told by her former manager, Keri Doyle, that she would need to make up time for work missed due to appointments or illness.  *Id.* ¶¶ 11, 14.  On several occasions, Doyle told Plaintiff that she "might be terminated" due to her use of allotted PTO for pregnancy-related appointments and/or sickness.  *Id.* ¶ 15.  When Plaintiff requested assistance with procuring necessary accommodations in connection with her pregnancy, Doyle told her to "handle it online," without further articulating the process.  *Id.* ¶ 41.

Even though Doyle and other supervisors were aware of her pregnancy and pregnancy-related illness, Plaintiff began to accrue Occurrences.  *See id.* ¶¶ 16, 21, 20.  On March 29, 2022,

Plaintiff received a "Written Warning" from Defendant regarding her Occurrences.  *Id.* ¶ 20.  On April 7, 2022, Plaintiff received a "Final Written Warning" regarding her Occurrences.  *Id.* ¶ 24. On or about June 22, 2022, after receiving a doctor's note advising her to stay out of work for two days, an unidentified representative of Defendant told Plaintiff that she could not take any more time off from work.  *Id.* ¶ 26.

On June 30, 2022, Plaintiff was placed on emergency PTO by her supervisor due to a particularly extreme bout of vomiting.  *Id.* ¶ 42.  Later that same day, Doyle called Plaintiff and told her that she was terminated.  *Id.*  During the call, Doyle stated that it seemed "like [Plaintiff has] a lot of medical issues."  *Id.* ¶ 43.

Additionally, while she was employed, Plaintiff was never notified of her eligibility for leave under the Connecticut Family and Medical Leave Act ("CTFMLA").  *Id.* ¶¶ 17, 23, 34–38. In fact, Defendant incorrectly informed her that she did not qualify for such leave because of her tenure with the company, despite that Connecticut law was amended in 2022 to afford people with Plaintiff's level of tenure the right to such leave.  *Id.* ¶¶ 39, 75.

Plaintiff filed an administrative complaint against Defendant regarding these events with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and, after its investigation, received a release of jurisdiction allowing her to bring a civil action.  *Id.* ¶ 2.

Thereafter, on April 19, 2023, Plaintiff filed the present action against Defendant in Connecticut Superior Court, claiming that Defendant violated the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-51 *et seq*, and asserting two common-law claims. Specifically, Plaintiff asserts six counts:  (1) disability discrimination under the CFEPA; (2) sex discrimination under the CFEPA; (3) pregnancy discrimination under the CFEPA; (4) retaliation in violation of the CFEPA; (5) common law negligent misrepresentation; and (6) common law

negligent infliction of emotional distress.  Defendant subsequently removed the matter to federal court, invoking this Court's diversity jurisdiction.  ECF No. 1.  Defendant filed a partial answer to the complaint on June 1, 2023.  ECF No. 15.

That same day, Defendant moved to partially dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 16.  Specifically, Defendant moved to dismiss:  (1) the hostile work environment ("HWE") theories within Counts One and Two, ECF No. 1-5 ¶¶ 52 and 58, respectively, for failure to exhaust administrative remedies; (2) the negligent misrepresentation claim in its entirety, arguing that it is preempted by the CTFMLA, Conn. Gen. Stat. §§ 31-51kk *et seq.*; and (3) the negligent infliction of emotional distress claim in its entirety, because it fails to state a claim upon which relief can be granted.  Defendant did not move to dismiss any portion of Counts Three or Four.  In addition, under Federal Rule of Civil Procedure 12(f), Defendant moved to strike certain paragraphs of Plaintiff's complaint—paragraphs 17, 19, 22, 23, and 34 through 39—which relate to the alleged CTFMLA violations, arguing these paragraphs are immaterial, impertinent, or scandalous.

## II.     MOTION TO PARTIALLY DISMISS

### A.  Legal Standard[1]

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

---

[1] Plaintiff argues that Defendant's motion to dismiss must be construed as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) because it was filed after Defendant filed its answer.  ECF No. 23 at 6; *see also* Fed. R. Civ. P. 12(c).  Although Rule 12(b) does specify that a motion asserting certain defenses "must be made before pleading," courts have declined to consider motions made under Rule 12(b)(6) untimely where they were filed essentially simultaneously with an answer.  *See, e.g.*, *Beary v. W. Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985) (rejecting as "frivolous" plaintiff's argument that defendant waived its right to move to dismiss the complaint or, in the alternative, move for summary judgment by filing an answer where the filings were simultaneous); *see also* Federal Practice and Procedure (Wright & Miller) § 1361 Timing of Rule 12(b) Motions (collecting cases).  Here, according to the Court's electronic filing system, the answer was filed twenty-one minutes before the motion to partially dismiss the complaint and motion to strike.  In addition, Defendant's answer did not respond to most of the allegations it seeks to dismiss and preserved its 12(b)(6) affirmative defense.  *See* ECF No. 15 at 9–10 (no responses to paragraphs subject to motion to strike); *id.* at 17-20 (no responses to common law claims); *id.* at 20 (preserving 12(b)(6) defense; *but see id.* at 13, 14 (denying HWE allegations subject to motion to dismiss).  Thus, the Court declines to consider the motion untimely and will analyze Defendant's motion to dismiss pursuant to Rule 12(b)(6), not Rule 12(c).  The Court further notes that its decision on this procedural issue has no impact on its decision on the overall motion, since, as Plaintiff concedes, the standard under Rule 12(b)(6) is "identical" to the standard under Rule 12(c).  *See Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A. CFEPA Counts One and Two:  Hostile Work Environment ("HWE") Theory[2]

The Court first concludes that Plaintiff's current HWE claims are not reasonably related to the claims in her CHRO charge; therefore, these claims must be dismissed because she failed to exhaust available administrative remedies.

Before filing a lawsuit under the CFEPA, an employee is required to exhaust her claim by filing a charge with the CHRO. Once the CHRO has completed its investigation, it provides a release from jurisdiction, which allows the employee to proceed to court. *See* Conn. Gen. Stat. § 46a-100. Under Connecticut law, proper exhaustion of claims before the CHRO is a jurisdictional

---

[2] Defendant moves to dismiss *or strike* only the hostile work environment allegations within Counts One and Two, ECF No. 1-5 ¶¶ 52, 58, not Counts One and Two in their entirety. ECF No. 16-1 at 5. Plaintiff's opposition addresses Defendant's substantive exhaustion-based arguments for dismissal, but also briefly argues that "even if the court were to find that Plaintiff has not exhausted administrative remedies with regard to her hostile work environment claim, there is no basis to strike the paragraphs that the defendant requests be stricken, as those allegations also merely provide further factual foundation for Plaintiff's claims of discrimination and retaliation." ECF No. 23 at 13. Because the disputed allegations are almost verbatim recitals of the elements of a HWE cause of action, *compare* ECF No. 1-5 ¶¶ 52, 58 *to* Conn. Gen. Stat. § 46a-60(b)(8), the Court finds it appropriate to analyze them as an independent claim/theory subject to Defendant's motion to dismiss, rather than as "factual foundation" subject only to the motion to strike standard. *See Twombly*, 550 U.S. at 555; *see also Ware v. State*, 118 Conn. App. 65, 78 n.4, 86–87 (2009) (considering whether plaintiff had exhausted HWE "claim" that was not styled as a separate cause of action but was "in the context of recognized causes of action"). As noted below, the Court denies Defendant's motion to strike any allegations from the complaint.

requirement—in other words, the court does not have subject matter jurisdiction over the claim if it has not been properly exhausted. *See Ware*, 118 Conn. App. at 81.

In determining whether a claim that was not explicitly brought before the CHRO has been nonetheless properly exhausted, Connecticut courts apply the Second Circuit's "reasonably related" test. *Id.* at 82. Under this test, a subsequent claim is considered reasonably related if it "would fall within the reasonably expected scope of a [CHRO] investigation of the charges of discrimination." *See Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018) (internal citation omitted); *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003). A claim that is reasonably related to one brought before the CHRO will be allowed to proceed in federal court. This is essentially an allowance for "loose pleading" of CHRO charges, *see Ware*, 118 Conn. App. at 83, and it is the "substance of the charge and not its label" that controls the analysis, *Mathirampuzha v. Potter*, 548 F.3d 70, 76–77 (2d Cir. 2008). Courts have considered which boxes were checked on the CHRO charge as a relevant factor. *See, e.g.*, *Orkney v. Connecticut Tech. Sch. Sys.*, No. CV075002649, 2011 WL 1031950, at *2 (Conn. Super. Ct. Feb. 22, 2011).

In order to establish a claim for hostile work environment, a plaintiff must show that a workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal citation omitted); *see also O'Reggio v. Comm'n on Hum. Rts. & Opportunities*, 219 Conn. App. 1, 10, *cert. denied*, 346 Conn. 1028 (2023) (noting that Connecticut courts consistently look to federal law and Title VII when interpreting CFEPA claims). In assessing whether a plaintiff has met this burden, courts examine the alleged frequency, severity, and

pervasiveness of the conduct.  *Rivera*, 743 F.3d at 20.  "Hostile environment claims are different in kind from discrete acts," as "[t]heir very nature involves repeated conduct."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).  Even alleging multiple discrete instances of conduct is often not enough to raise the specter of an HWE claim for purposes of administrative exhaustion.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74–75 (2d Cir. 2001) (incidents must be "more than episodic" to be considered pervasive) (internal citation omitted); *Ray v. New York State Ins. Fund*, No. 16 CIV. 2895 (NRB), 2018 WL 3475467, at *7 (S.D.N.Y. July 18, 2018) (six discrete instances over five-year period did not raise HWE claim).

Even liberally construing Plaintiff's CHRO charge,[3] the Court finds that it does not raise anything akin to an HWE claim.  Although not dispositive, the Court notes that Plaintiff, who was represented by her present counsel before the CHRO, did not check the box for "harassed" or "sexually harassed," and did not write in anything resembling HWE in the "other" section of the charge form.  ECF No. 16-2 at 2; *see Orkney*, 2011 WL 1031950, at *2.  More importantly, the substance of the charge and attached complaint includes no allegation sufficient to put the CHRO on notice of any allegedly frequent, severe, or pervasive conduct that might have prompted it to investigate the workplace environment.  The complaint describes only several discrete instances of alleged discrimination.  The only allegation that could potentially be construed as describing

---

[3] In evaluating a motion to dismiss, the court may consider documents external to the complaint without converting the motion into one for summary judgment where the external documents are incorporated by reference into the complaint, are not incorporated by reference but are otherwise "integral" to the complaint, are "matters of which judicial notice may be taken," or are documents as to which the plaintiff had notice and relied upon in framing the complaint.  *Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 153 (2d Cir. 2002).  The Court finds that the CHRO charge is integral to the complaint, insofar as Plaintiff references it in her complaint as the foundation for her statement that she has "exhausted all administrative remedies."  *See* ECF No. 1-5 ¶ 2.  It is therefore proper to consider the CHRO charge attached to Defendant's motion (ECF No. 16-2).  *See also Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 n.33 (D. Conn. 2010) (taking judicial notice of CHRO Complaint attached to defendant's motion to dismiss in considering whether plaintiff had exhausted his administrative remedies); *id.* at 265 (noting that, to assess a jurisdictional requirement, affidavits and other pleading materials may be considered without converting a motion into one for summary judgment).

pervasive conduct is the allegation that "[o]n several occasions" Plaintiff was told that she might be terminated "in response to [her] attempted use of her allotted PTO for pregnancy-related appointments and/or sickness." ECF No. 16-2 at 5 ¶ 12. Even assuming this allegation sets forth repeated instances of discrimination, the Court cannot find that it alleges anything like a work environment "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Rivera*, 743 F.3d at 20.

In sum, because Plaintiff's HWE theories in Counts One and Two are not reasonably related to any claim raised by her CHRO charge, the theory has not been properly exhausted and must be dismissed from those counts.

### B.  Count Five:  Negligent Misrepresentation

Next, the Court holds that Plaintiff's negligent misrepresentation claim must be dismissed, as it is a veiled attempt to bring a claim she is time-barred from pursuing under the CTFMLA.

To prevail on a cause of action for negligent misrepresentation under Connecticut law, a plaintiff must show "(1) that the defendant made a misrepresentation of fact, (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Coppola Const. Co. v. Hoffman Enterprises Ltd. P'ship*, 309 Conn. 342, 351–52 (2013) (internal citation omitted); *see also Corcoran v. G&E Real Est. Mgmt. Servs., Inc.*, 484 F. Supp. 3d 43, 50 (D. Conn. 2020) (same).

Here, the parties do not dispute that the false misrepresentation Plaintiff will need to prove to satisfy the first and second elements of her claim is that Defendant misrepresented Plaintiff's eligibility under the CTFMLA by incorrectly informing her that she was not eligible for CTFMLA leave. *See* ECF No. 16-1 at 10; ECF No. 23 at 14. It also appears to the Court that (1) such a

misrepresentation would itself constitute a violation of the CTFMLA[4]; and (2) that the CTFMLA provides a remedy for such a violation—to which Plaintiff would have been entitled had she brought a claim under the CTFMLA within the applicable statute of limitations.[5]

The question for the Court therefore becomes whether Plaintiff's common law negligent misrepresentation claim is preempted by the CTFMLA, based on the facts and circumstances present here. Because this presents a question of state law in a diversity case, the Court is obligated to apply Connecticut law on this issue. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). However, neither the parties nor the Court have identified a Connecticut state court decision dealing with this precise issue. When Connecticut's law is uncertain or ambiguous, this Court must predict how the Connecticut Supreme Court would rule. *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). The Court predicts that the Connecticut Supreme Court would hold that Plaintiff's negligent misrepresentation claim is barred in this instance.

The Connecticut Supreme Court has clearly held that common law claims for wrongful termination in violation of public policy are precluded when (1) the elements of a statutory violation (the public policy) have not been satisfied; or (2) the relevant statute provides a remedy. *Burnham v. Karl & Gelb, P.C.*, 252 Conn. 153, 158 (2000). In so holding, *Burnham* emphasized

---

[4] Courts have held that misrepresentations regarding eligibility for FMLA leave may constitute interference under the FMLA, which is analogous to the CTFMLA. *See, e.g.*, *Kanios v. UST, Inc.*, No. 3:03-cv-369 (DJS), 2005 WL3579161, at *10 (D. Conn. 2005) ("The basis for Kanios's FMLA claim is that UST misrepresented the amount of time she had available for federal FMLA leave and thus interfered with Kanios's FMLA rights."); *see also Cendant Corp. v. Commissioner of Labor*, 276 Conn. 16, 23, 27 (2005) (noting that the "Connecticut leave statute is our state analogue to FMLA," and "turn[ing] to federal cases interpreting the relevant FMLA provisions for guidance" in interpreting CTFMLA). Contrary to Plaintiff's assertion at oral argument, "an employee alleging a claim of interference under FMLA does not need to prove the employer's intent for liability to attach to the employer." *Id.* at 28, 31 (2005) (applying this standard to the CTFMLA).

[5] Any claim Plaintiff may have had under the CTFMLA is indisputably time-barred, *see* Conn. Gen. Stat. § 31-51pp(e). Plaintiff concedes as much by her silence in response to this issue. Plaintiff's point that she is entitled to plead her negligent misrepresentation claim as an alternative to a CTFMLA claim, while correct as a general matter, is inapposite because Plaintiff does not have a valid CTFMLA claim. *See Campbell v. Town of Plymouth*, 74 Conn. App. 67, 76 (2002) ("The court, therefore, did not prevent the plaintiff from pleading in the alternative, but simply did not allow him to plead an invalid alternative.").

that claims for wrongful termination in violation of public policy represent a "narrow" exception to Connecticut's general policy that employers may engage in "unfettered termination of an at-will employment relationship." *Id.* at 159 (citation omitted). Only when termination was "demonstrably *improper*" (in violation of public policy) and "the employee was *otherwise without remedy*" would the common law claim be allowed. *Id.* (citations omitted) (emphasis in original). The court held that the plaintiff, who claimed her termination was a violation of the whistleblower statute, could not bring a wrongful termination claim because she could not show that her whistleblowing activity actually met the elements of the whistleblower statute and, even if it had, the whistleblower statute provided an administrative remedy that was exclusive. *Id.* at 160–62. In other words, the statutory remedy, not the common law, provides the exclusive remedy for the wrongful termination when a termination is in violation of public policy—even though the whistleblower statute does not have a provision providing that its remedy was the exclusive remedy. *Id.* at 161–62. *See Campbell*, 74 Conn. App. at 75 ("[A]lthough admittedly § 31-51m also contains no exclusivity language, *Burnham*, as previously stated, does provide adequate precedent from this state's highest court that § 31-51m is an exclusive remedy.").

*Burnham*'s holding has been expanded to apply to other statutes, thereby precluding other common law claims. *See, e.g.*, *Pickering v. Aspen Dental Mgmt., Inc.*, 100 Conn. App. 793, 799 (2007) (jury duty statute provided exclusive remedy for termination in violation of statute, even where plaintiff characterized his claim as negligence *per se*, not wrongful termination); *Powell v. Greenwald Indus., Inc.*, No. CV095013578, 2010 WL 2383784, at *5 (Conn. Super. Ct. Apr. 29, 2010) (recognizing split among Superior Court judges on the issue, but holding that where a plaintiff relied "exclusively" on violation of CFEPA for his claim of breach of implied covenant of good faith and fair dealing, CFEPA provides exclusive relief); *Michalsky v. Moffly Publications,*

*Inc.*, No. FSTCV196042420S, 2020 WL 5537003, at *6–*7 (Conn. Super. Ct. Aug. 13, 2020) (recognizing that violations of statutes, including the CFEPA, were "insufficient bases" to establish injury prong of negligent supervision claim, but allowing negligent and reckless supervision claim based on injuries that were not compensable by statute); ECF No. 16-1 at 13– 14 (collecting cases).  At least one Connecticut Superior Court decision held that a wrongful termination claim could not arise where the alleged termination was wrongful because it was in violation of the CTFMLA and FMLA.  *See Jarrett v. Cmty. Renewal Team, Inc.*, No. CV020816341S, 2003 WL 1962835, at *4 (Conn. Super. Ct. Apr. 3, 2003); *see also Vera v. Waterbury Hosp.*, No. 3:10-CV-1417 WWE, 2010 WL 4736278, at *3 (D. Conn. Nov. 16, 2010) (where plaintiff is "able to assert all of his claims" through various statutes, including the FMLA, wrongful termination claim was preempted).

Defendant asks this Court to predict that the Connecticut Supreme Court, if presented with this case, would expand *Burnham* and its progeny to a new statute (the CTFMLA) and a new common law claim (negligent misrepresentation) and hold that, because the CTFMLA provides a remedy for Plaintiff to challenge Defendant's conduct, the CTFMLA precludes Plaintiff's claim for negligent misrepresentation.  The Court declines to do so, but nonetheless finds that Plaintiff cannot pursue her negligent misrepresentation claim in this instance.

First, the Court notes that the CTFMLA, unlike the statutes to which *Burnham* has been expanded, has an express non-exclusivity provision.  This provision states:  "[t]he rights and remedies specified in this section are cumulative and nonexclusive and are in addition to any other rights or remedies afforded by contract or under other provisions of law."  Conn. Gen. Stat. § 31-51pp(f).  As the parties point out, Connecticut courts have discussed the relevance of an *exclusivity* provision in a statute in the context of whether employment-related claims are preempted by

statutes. *See, e.g.*, *Campbell*, 74 Conn. App. at 75; *see also DeOliveira v. Liberty Mut. Ins. Co.*, 273 Conn. 487, 496 (2005).  Neither the parties nor the Court, however, have identified a Connecticut state court case specifically analyzing this question in the context of any statute—let alone the CTFMLA—that has an express *non-exclusivity* provision.

The Court would thus ordinarily attempt to interpret CTFMLA's non-exclusivity provision using traditional canons of statutory interpretation, as a question of first impression.  Such analysis begins with the text of the statute itself.  *See* Conn. Gen. Stat. § 1-2z.  While it is clear the CTFMLA's rights are nonexclusive to other rights or remedies afforded by contract, the parties' dispute centers on the meaning of the phrase "or under other provisions of law."  Defendant argues that "other provisions of law" refers only to rights granted by statutes, not by common law.  In Defendant's view, because the non-exclusivity provision means the CTFMLA's rights are nonexclusive only to other rights afforded by statute, and not to common law rights, the non-exclusivity provision does not speak to the precise situation at issue here, where Plaintiff is pursuing a common law claim for negligent misrepresentation.  Thus, Defendant argues that the Court should treat the CTFMLA like any other statute that does not have an exclusivity provision, and analyze it according to *Burnham*'s logic.  *See* ECF No. 16-1 at 20, 20 n.2.  Plaintiff, on the other hand, places great emphasis on the existence of the non-exclusivity provision.  At oral argument, Plaintiff took the position that the phrase "other provisions of law" includes common law and, even if it does not, the mere fact that a non-exclusivity provision was included in the CTFMLA at all should caution against holding that the CTFMLA is Plaintiff's exclusive remedy for addressing Defendant's alleged conduct.

Both parties' readings of the phrase "provisions of law" have some support.  *Compare Cordero v. Univ. of Conn. Health Ctr.*, 308 Conn. 215, 233 n.17 (2013) (as used in another state

statute, the phrase "irrespective of any other provision of law" is "intended to address [relevant] statutes"); *Provision*, *Black's Law Dictionary* (11th ed. 2019) ("A clause in a statute, contract, or other legal instrument."); *Provided by law*, *Black's Law Dictionary* (6th ed. 1990) ("This phrase when used in a constitution or statute generally means prescribed or provided by some statute."); to *Adesokan v. Town of Bloomfield*, 347 Conn. 416, 440 (2023) (noting that savings clause in statute which "provide[s] that the terms of the statute govern 'except as otherwise provided by law,' preserve[s] and incorporate[s] common-law exceptions to municipal immunity") (citation omitted) (cleaned up); *Poirier v. Papadopoulos*, No. CV065001333S, 2007 WL 2245893, at *2 (Conn. Super. Ct. July 19, 2007) (finding that statute that applies "notwithstanding any other provision of law" "preclude[d] liability under Connecticut common law"); *Ridgeway v. Royal Bank of Scotland Grp.*, No. 3:11-CV-976 VLB, 2012 WL 1033532, at *18 (D. Conn. Mar. 27, 2012) (recognizing ambiguity in the phrase "provisions of law," but finding that the "provision as a whole indicates that the CTFMLA is not intended to function as an exclusive remedy").  Further, the Connecticut Supreme Court has cautioned that "[i]n the absence of explicit language indicating that the statute is the exclusive remedy," preemption of common-law causes of action should not be "presume[d]."  *Caciopoli v. Lebowitz*, 309 Conn. 62, 72 (2013); *see also Giametti v. Inspections, Inc.*, 76 Conn. App. 352, 361 (2003) (noting that, where statute relating to residential property purchases "contain[ed] no language to suggest that [it] was intended to provide the exclusive remedy," it did not appear that "legislature . . . intend[ed] to preclude preexisting common-law actions for negligent misrepresentation").

However, the Court need not determine for purposes of this decision whether "other provisions of law" encompasses common law because, even assuming *arguendo* that Plaintiff's reading is correct, the Court nonetheless finds that Plaintiff's particular negligent

misrepresentation claim must be dismissed for an independent reason. Plaintiff's claim, which rests entirely on a violation of the CTFMLA, is an attempt to use the label of negligent misrepresentation to bring a time-barred CTFMLA claim. Because the claim depends entirely on Plaintiff proving a CTFMLA violation she is not entitled to pursue, the claim fails.

While Plaintiff attempts to cast her negligent misrepresentation claim as somehow distinct from a CTFMLA claim, she cannot prove elements of her negligent misrepresentation claim without also proving that Defendant violated the CTFMLA. The CTFMLA provides, in relevant part, that it is illegal for an employer to "interfere with, restrain or deny the exercise of, or the attempt to exercise," any right provided under the statute. Conn. Gen. Stat. § 31-51pp(a)(1). Under Plaintiff's theory of negligent misrepresentation, Defendant effectively interfered with her CTFMLA rights by misrepresenting her eligibility to exercise them. *See Kanios*, 2005 WL3579161, at *10 (advancing similar theory under the FMLA). If the CTFMLA did not afford her such rights, there would be no misrepresentation. Put another way, there is no misrepresentation beyond the alleged statutory violation.

Both state and federal courts in Connecticut have held that statutory violations cannot serve as the sole bases for common law employment-related claims. *See Michalsky*, 2020 WL 5537003, at *6 (violation of statutes could not be used to "satisfy the injury prong of a negligent supervision claim"); *Deguzman v. Kramer*, No. 3-04-CV-2064 (JCH), 2005 WL 2030447, at *2 (D. Conn. Aug. 23, 2005) (noting that a claim for negligent supervision requires an "injury in tort," and "[f]or this court to allow a violation of [a federal employment law statute] to satisfy the injury prong of [a negligent supervision claim] would be to create a cause of action under state law with no indication from either the Connecticut legislature or courts that such a cause of action is appropriate"); *see also Powell*, 2010 WL 2383784, at *5 (plaintiff could not bring breach of the

implied covenant of good faith and fair dealing claim based "exclusively on the public policy embodied in the CFEPA"). The Court finds the rationale of these cases persuasive, and likewise finds that Plaintiff cannot sustain her common law cause of action based only on an alleged violation of the CTFMLA. Even taking Plaintiff's reading of the CTFMLA's non-exclusivity provision, the Court cannot read it to *expand* the availability of common law claims.

The CTFMLA's clear, and relatively short, statute of limitations period further persuades this Court that employer liability should not be expanded to allow a negligent misrepresentation claim based entirely on a CTFMLA violation to proceed when it is brought outside of that limitations period. *See* Conn. Gen. Stat. § 31-51pp(e) (setting statute of limitations for CTFMLA claim at "one hundred eighty calendar days"); *Thibodeau v. Design Grp. One Architects, LLC*, 260 Conn. 691, 716 (2002) (noting that the common law is "powerless to abrogate" statutory enactments, and the two should "be construed together as one consistent and harmonious whole") (citation omitted); *S. Connecticut Gas Co. v. City of New Haven Hous. Auth.*, No. 27 97 11, 1991 WL 270372, at *1 (Conn. Super. Ct. Dec. 5, 1991) ("The general rule is that where a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right - it is a limitation of the liability itself as created, and not of the remedy alone.") (quoting *Diamond Nat. Corp. v. Dwelle*, 164 Conn. 540, 543 (1973)). Plaintiff cannot reincarnate her time-barred CTFMLA claim in negligent misrepresentation form.

Separately, Plaintiff's negligent misrepresentation claim could also properly be characterized as a claim for wrongful termination in violation of public policy, which directly implicates *Burnham* and its progeny, and would tend to preclude the claim. Plaintiff alleges that as a result of Defendant's misrepresentation of her eligibility under the CTFMLA, she did not

apply for benefits and "as a result was terminated."  ECF No. 1-5 ¶ 78.  Plaintiff conceded at oral argument that the harm from the negligent misrepresentation was the termination itself.  Substantively, then, this appears to be a wrongful termination claim "mask[ed]" as a negligence claim, to which *Burnham*'s rule of statutory exclusivity would apply.  *See Pickering*, 100 Conn. App. at 79 (analyzing negligence *per se* claim based on termination in violation of statute as wrongful termination claim); *see also Medvey v. Oxford Health Plans*, 313 F. Supp. 2d 94, 98–99 (D. Conn. 2004) ("conspiracy" claim for denial of employment and disability benefits was "nothing more than a common law claim of wrongful discharge").  For these reasons, Plaintiff is precluded from pursuing her common law negligent misrepresentation claim.

The parties devote significant discussion to *Ridgeway*, in which Judge Bryant allowed common law promissory estoppel and negligent misrepresentation claims to proceed in a case also alleging violations of the FMLA and CTFMLA.  Like this Court, Judge Bryant did not decide whether the phrase "provisions of law" in the CTFMLA's non-exclusivity provision "was intended to refer to other statutory schemes or common law," but she noted, in allowing the common law claims to proceed past a motion to dismiss, that the non-exclusivity provision "as a whole indicates that the CTFMLA is not intended to function as an exclusive remedy to aggrieved employees." 2012 WL 1033532, at *18.  In light of the non-exclusivity provision and the lack of any cases precluding common law promissory estoppel and negligent misrepresentation claims, Judge Bryant allowed these claims to proceed.  *Id.* at *20.

This Court is not bound by *Ridgeway* and, in any event, *Ridgeway* is factually distinguishable from the present case.  First, there, the common law claims were based on the employer's misrepresentations of *its policies* to the plaintiff, which led to the plaintiff not coming back to work on time from a surgery.  The claims were not, as in the present case, wholly dependent

on a misrepresentation of the plaintiff's rights under the CTFMLA.  Second, the plaintiff in *Ridgeway* was not wrongfully terminated in violation of the CTFMLA.  As Defendant points out, Ridgeway's termination was rightful under the statute because his leave had expired—but his employer had misled him about its policy for calculating leave and how much leave he had left. Here, by contrast, Plaintiff's claim is essentially that she was wrongfully terminated, *in violation of the statute*, because of Defendant's interference with her rights under the statute.  Third, the plaintiff in *Ridgeway* was not attempting to resurrect an otherwise untimely CTFMLA claim by labeling it something else, as his complaint expressly included a CTFMLA claim (and a federal FMLA claim) alongside his state common law claims.  For these reasons, neither *Ridgeway's* holding nor its analysis dictates the outcome here.

In sum, because Plaintiff's negligent misrepresentation claim is coextensive with a time-barred CTFMLA claim, Defendant's motion to dismiss Plaintiff's negligent misrepresentation claim is granted.  In granting this motion, the Court emphasizes the narrowness of its holding:  it does not suggest that all common law claims or all negligent misrepresentation claims would be precluded by the CTFMLA.  In this specific case, however, given the particular nature of the negligent misrepresentation claim, Plaintiff's sole and exclusive remedy was a timely claim brought under the CTFMLA.

### C.  Count Six:  Negligent Infliction of Emotional Distress

Finally, the Court dismisses Plaintiff's negligent infliction of emotional distress claim.

Under Connecticut law, "[t]o prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove: '(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the

defendant's conduct was the cause of the plaintiff's distress.'"  *Grasso v. Connecticut Hospice, Inc.*, 138 Conn. App. 759, 771 (2012) (internal citation omitted).  In the employment context, a negligent infliction of emotional distress ("NIED") claim arises only when it is based on "unreasonable conduct of the defendant in the termination process"—it cannot arise out of conduct that occurs in continued employment.  *Id.* (citing *Perodeau v. Hartford*, 259 Conn. 729, 750, 762–63 (2002)).  In implementing this limitation on NIED claims, the *Perodeau* court emphasized that the policy rationales in favor of this limitation, such as enabling employers to ensure productivity in the workplace and preventing a flood of potentially spurious litigation, outweighed the interest in allowing persons to be compensated for emotional injuries "when the employment relationship is ongoing."  *Perodeau*, 259 Conn. at 758–60.  The court found that "individuals in the workplace reasonably should expect to experience some level of emotional distress … as a result of conduct in the workplace," including from "routine employment-related conduct … such as disciplinary or investigatory action arising from actual or alleged employee misconduct."  *Id.* at 757.  However, the "societal costs of allowing claims" for this kind of quotidian workplace emotional distress were "unacceptably high," in the court's view.  *Id.* at 762.

Since *Perodeau*, courts have grappled with determining exactly what the "termination process" or "conduct occurring in the termination of employment" encompasses.  *Id.* at 763.  Most courts applying the rule in *Perodeau* to NIED claims brought by employees who were actually terminated (rather than constructively terminated[6]) have considered the "termination process" to include the events immediately leading up to, and immediately following, the termination of the

---

[6] Many of the cases relied on by Defendant deal with employees attempting to assert NIED claims in the context of ongoing employment, constructive termination, or resignation.  *See, e.g.*, *Watson v. Wheeler Clinic, Inc.*, No. 3:21-CV-0503 (MPS), 2022 WL 2916825 (D. Conn. July 25, 2022); *Grande v. Hartford Bd. of Educ.*, No. 19-CV-00184 (KAD), 2020 WL 70815 (D. Conn. Jan. 7, 2020); *Michaud v. Farmington Cmty. Ins. Agency*, No. CV010806951S, 2002 WL 31415478 (Conn. Super. Ct. Sept. 25, 2002).  Understandably, these cases interpret *Perodeau* to prohibit these sorts of claims, since there is either no termination process, or the termination is of indeterminable duration. Since Plaintiff here was actually terminated by Defendant, the Court finds these cases of limited relevance.

employee.  *See, e.g., Tomick v. United Parcel Serv., Inc.*, 511 F. Supp. 2d 235, 238 (D. Conn. 2007) (considering two-day period from when employer first threatened to fire employee until employee was fired the next day as the "termination process"); *Davis v. Manchester Health Ctr., Inc.*, 88 Conn. App. 60, 72–73 (2005) (events of the day leading up to termination could be reasonably considered by jury in evaluating NIED claim).  They have by and large declined to extend the "termination process" to events weeks or months before the termination of employment.  *See Tracy v. New Milford Pub. Sch.*, 101 Conn. App. 560, 572 (2007) (disciplinary action taken one year prior to discharge was not part of the termination process where it was not "connect[ed]" to the discharge process); *Ferrari v. First & Last Tavern of Guilford*, No. NNHCV076001677S, 2009 WL 4852193, at *7 (Conn. Super. Ct. Nov. 19, 2009) ("progression of events" over an "eighty-seven day" period was not part of the termination); *Dichello v. Marlin Firearms Co.*, No. CV065002796, 2009 WL 2506329, at *3–*4 (Conn. Super. Ct. July 9, 2009) (circumstances surrounding decision to take medical leave six months before termination were not part of the termination process).

Here, the Court finds it appropriate to determine that, as a matter of law,[7] the termination process encompasses the events of June 30, 2022, which involved Plaintiff being "placed on emergency PTO by Doyle due to particularly extreme bout of vomiting," and being terminated later that same day.  *See* ECF No. 1-5 ¶¶ 42, 43; *id.* ¶ 79 (incorporating these paragraphs by reference into NIED claim).  No case identified by Defendant requires that the termination process is limited only to a single moment in time, particularly when the plaintiff puts forth allegations of events very near to the actual termination that could reasonably be construed as part of the process.

---

[7] The Court notes that at least one case, cited by Plaintiff, declined to determine the scope of the termination process because it concluded this was the province of the fact-finder.  *See Noonan v. Miller Mem'l Cmty. Home, Inc.*, 50 Conn. Supp. 367, 371–72 (Super. Ct. 2007).  However, *Noonan* is not binding on this Court, and the Court agrees with Defendant's reply that it is against the weight of authority in this area.  *See* ECF No. 26 at 5 (collecting cases).

*See, e.g.*, *Dichello*, 2009 WL 2506329, at *4 (considering contents of termination letter, and manner in which it was sent or delivered, in assessing NIED claim, while declining to consider events six months earlier).

On the other hand, the Court rejects Plaintiff's argument that certain pre-termination events took place within the "termination process."  *See* ECF No. 23 at 9 (citing ECF No. 1-5 ¶¶ 15, 20, 24).  First, although Plaintiff alleges in paragraph 15 of her complaint that she was told she "might" be terminated if she missed work for pregnancy-related appointments, she does not provide any specifics as to *when* she was told this; a finding that the termination process extends to the unspecified dates of those comments would therefore be unsupportable.  Moreover, the written warnings Plaintiff received on March 29, 2022, and April 7, 2022, for absences are more akin to disciplinary incidents arising from her alleged misconduct that fall short of actual termination, even if they arguably contributed to her ultimate termination.  *See Groth v. Grove Hill Med. Ctr., P.C.,* No. 3:14-CV-01563 RNC, 2015 WL 4393020, at *8–*9 (D. Conn. July 15, 2015) (citing *Perodeau* to find that written warning and investigation preceding termination were best characterized as disciplinary or investigatory actions arising from the plaintiff's misconduct, rather than events that are part of the termination process).  A holding that the termination process encompasses the events of June 30, 2022, only, accords with *Perodeau* and its progeny.

Once the termination process is delineated, the question becomes whether the alleged conduct of the defendant is sufficiently unreasonable to state a claim for NIED.  On this question, courts look to whether the termination was "done in an inconsiderate, humiliating or embarrassing manner."  *Corcoran v. G&E Real Est. Mgmt. Servs., Inc.*, 484 F. Supp. 3d 43, 53 (D. Conn. 2020) (internal citation omitted).  "The mere termination of employment, even where it is wrongful," is not enough to sustain an NIED claim, since the "mere act of firing an employee, even if wrongfully

motivated, does not transgress the bounds of socially tolerable behavior." *Parsons v. United Techs. Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 88–89 (1997) (internal citation omitted).

Here, the Court finds that the allegations regarding Defendant's conduct on June 30, 2022, do not rise to the level necessary to state a claim for NIED. Initially, Plaintiff does not argue that any events on June 30, 2022, were so unreasonable as to support a NIED claim. Moreover, Plaintiff's allegations—that she was "placed on emergency PTO . . . due to [a] particularly extreme bout of vomiting," terminated via phone call later that day, and told during that phone call that she had "a lot of medical issues," ECF No. 1-5 ¶¶ 42–43—do not transgress the bounds of socially tolerable behavior. *See Parsons*, 243 Conn. at 89. Though Defendant may have acted somewhat insensitively by firing Plaintiff the day she was sent home for extreme pregnancy-related vomiting, the Court cannot find that Defendant's conduct was *so unreasonable* as to sustain an NIED claim, in light of the standards Connecticut courts use to assess the viability of such claims. Indeed, Plaintiff has not alleged any particular emotional distress associated with the timing of her termination.

Additionally, Plaintiff has not alleged that she was forced to choose between her health and her job, or that Defendant interfered with her efforts to pursue health care on June 30, 2022. *See, e.g.*, *Davis*, 88 Conn. App. at 72–73 (jury could have reasonably found for the plaintiff on an NIED claim where "there was no real alternative other than to sacrifice her job rather than endanger her pregnancy"); *Tomick*, 511 F. Supp. 2d at 238–39 (denying motion to dismiss NIED claim where "superiors restrict[ed] [plaintiff's] efforts to seek treatment for a known back condition" and instead "prevented him from leaving and threatened to terminate him"). Plaintiff does not suggest that Defendant told her on June 30, 2022, that she should work despite her extreme vomiting, or suggested putting her health at risk in any way that day. Doyle telling Plaintiff she had "a lot of

medical issues" likewise is not inherently inconsiderate, humiliating, embarrassing, or beyond "the bounds of socially tolerable behavior;" especially when Plaintiff herself makes clear that she *did have* at least two medical issues—her pregnancy-related condition and COVID-19, *see* ECF No. 1-5 ¶¶ 6, 9—and alleges nothing about Doyle's tone, or anything else about the statement that might have made it more problematic in context.

In sum, because this Court finds that Plaintiff's complaint fails to allege that Defendant's conduct during the termination process was unreasonable, Defendant's motion to dismiss Plaintiff's NIED claim is granted.

### III.   MOTION TO STRIKE

A. Legal Standard[8]

Motions to strike are governed by Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) provides, in pertinent part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  A party moving to strike "bears a heavy burden and must show that (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) permitting allegations to stand would result in prejudice to the movant." *MCI Healthcare, Inc. v. United Health Grp., Inc.*, No. 3:17-CV-01909 (KAD), 2019 WL 2015949, at *11 (D. Conn. May 7, 2019) (internal punctuation omitted) (quoting *Walczak v. Pratt & Whitney*, No. 3:18-CV-0563 (VAB), 2019 WL 145526, at *2 (D. Conn. Jan. 9, 2019)), *reconsideration granted in part*, 2019 WL 3202965 (D. Conn. July 16, 2019).  In evaluating the relevance and admissibility

---

[8] Plaintiff argues that Defendant's motion to strike is time-barred since it was filed after Defendant filed its answer. ECF No. 23 at 16; *see also* Fed. R. Civ. P. 12(f) (the court may act on a motion to strike made "before responding to the pleading").  As with Plaintiff's procedural argument against Defendant's motion to dismiss, the Court declines to consider Defendant's motion to strike untimely in light of the fact that it was filed twenty-one minutes after Defendant's answer, and will instead assess the motion on the merits.  *See supra*, note 1.  This conclusion is further bolstered by the fact that Defendant did not respond to the paragraphs it moves to strike, *see supra*, note 1.

questions in the context of evaluating a 12(f) motion, the court is mindful that "[e]videntiary questions…should especially be avoided at such a preliminary stage of the proceedings…[a]nd ordinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

      B.  <u>Discussion</u>

Defendant moves to strike all of the paragraphs in Plaintiff's complaint that relate to and allege a violation of CTFMLA. ECF No. 16-1 at 22. Without citation, Plaintiff responds that the challenged paragraphs may be relevant to her discrimination claims, since facts which demonstrate a violation of the CTFMLA may tend to provide a violation of the CFEPA. ECF No. 23 at 17–18. Also without citation, Defendant replies that the CFEPA does not require the same kinds of notices that Defendant allegedly failed to provide under the CTFMLA; therefore, a violation of the CTFMLA is irrelevant to the question of liability under the CFEPA. *See* ECF No. 26 at 10–11.

On this sparse record, the Court cannot conclude that defendant has met its "heavy burden" under Rule 12(f). *See MC1*, 2019 WL 2015949, at *11. Put simply, Plaintiff's claims under the CFEPA require her to show that she was discriminated against on the basis of a protected characteristic, or retaliated against for engaging in protected activity. *See* Conn. Gen. Stat. §§ 46a-60(b)(1), (4), (7). Although the Court acknowledges Defendant's contention that the CFEPA does not require the same kind of notice as the CTFMLA, and that Plaintiff has not brought a claim under the CTFMLA, the Court is not prepared to conclude at this juncture, without more of a showing, that allegations related to potential violations of the CTFMLA are completely irrelevant

to Plaintiff's other claims, or are unduly prejudicial to Defendant.[9]  Should this matter proceed to trial, Defendant is free to revisit the question of admissibility of evidence related to these allegations through a motion *in limine*.

Thus, Defendant's motion to strike certain paragraphs of Plaintiff's complaint is denied.

## IV.    CONCLUSION

For the reasons described above, Defendant's motion to partially dismiss, ECF No. 16, is GRANTED.    Specifically, the HWE theories in Counts One and Two, the negligent misrepresentation claim (Count Five), and the NIED claim (Count Six) are DISMISSED. Defendant's motion to strike, ECF No. 16, is DENIED.

Defendant shall file an amended answer, answering the paragraphs that were not stricken, by **January 8, 2024**.  To the extent Plaintiff desires to file an amended complaint to attempt to remedy the pleading deficiencies identified herein, she must file a motion for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) by **January 8, 2024**.  Any motion to amend the complaint or join parties filed by Plaintiff after that deadline will be subject to the more stringent standard set forth in Federal Rule of Civil Procedure 16(b)(4).  In the event that Plaintiff moves for leave to amend the complaint, discovery will not be stayed for the pendency of that motion.

**SO ORDERED** at Hartford, Connecticut, this 7th day of December, 2023.

_/s/ Sarala V. Nagala_
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

---

[9] For instance, Defendant does not contend that the allegations broaden the scope of discovery significantly.  It claims only that these allegations could cast it in a bad light if potential jurors, "or perhaps members of the media," ECF No. 16-1 at 23, happen to read the complaint.  Such risks are purely speculative at this point.